**Jose ALVAREZ, Plaintiff,**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.**

**No. 87 Civ. 80 (WCC).**

United States District Court, S.D. New York.

Jan. 18, 1989.

Peter Margulies, New York Law School Federal Litigation Clinic, Michael L. Perlin, Director, New York City (Karen Gallinari, Harry Zirlin, Law Interns, of counsel), for plaintiff.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City (Kathleen A. Zebrowski, Sp. Asst. U.S. Atty., of counsel), for defendant.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

This is an action brought by plaintiff Jose Alvarez under Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3) (the "Act"), challenging a final determination of the Secretary of Health and Human Services (the "Secretary") denying Mr. Alvarez's application for disability benefits. The case is currently before the Court on the parties' cross-motions for judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c). For the reasons set forth below, the Court orders that the matter be remanded to the Secretary for a new hearing consistent with this opinion.

## BACKGROUND

Mr. Alvarez filed an application for disability benefits under Title XVI of the Social Security Act on December 4, 1984. The application was denied initially and upon reconsideration. Mr. Alvarez then requested a hearing to review his claim. On December 11, 1985 a hearing was held before Administrative Law Judge Jeffrey Kohlman (the "ALJ"), who considered the case *de novo*. The ALJ issued a decision on January 6, 1986 in which he found that Mr. Alvarez was not disabled within the meaning of the Act. After reviewing the

ALJ's decision at Mr. Alvarez's request, the Appeals Council remanded the action to the ALJ on May 8, 1986, because the ALJ had failed to include a completed Psychiatric Review Technique Form with his decision.[1] The ALJ issued an amended decision on August 6, 1986, summarizing the previous decision and stating that he had completed the required form contemporaneously with the December hearing. The ALJ appended that form to the previous decision. When, on November 12, 1986, the Appeals Council upheld the August decision by denying Mr. Alvarez's request for review, the August decision became the final determination of the Secretary, exhausting the administrative remedies available to Mr. Alvarez. Mr. Alvarez now appeals to the Court for relief.

In the August decision, the ALJ found that "the claimant has severe back pain, headaches, hearing loss, and personality disorder, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4." Tr. at 13. The ALJ also found, (1) that "the claimant has not engaged in substantial gainful activity since 1979," (2) that "the claimant is unable to perform his past relevant work as a maintenance worker," (3) that "the claimant does not have any acquired work skills which are transferable to the skilled or semi-skilled work activities of other work," (4) that "claimant has a limited education," (5) that "claimant is 30 years old, which is defined as a younger person," and (6) that "claimant had the residual functional capacity to perform work-related activities except for work involving strenuous activities or frequent contact with co-workers or work involving complex tasks." *Id.* Based on all of these factors, the ALJ held that the regulations "would direct a conclusion of 'not disabled.'" *Id.* Finally, the ALJ concluded that "there are a significant number of jobs in the national economy which he could perform. Examples of such jobs are: sorter in the jewelry industry; sorter in the button industry; machine operator and packer." *Id.* The ALJ then held that "the claimant is not eligible for Social Security Income under sections 1602 and 1614(a)(3)(A) of the Social Security Act." Tr. at 14.

## DISCUSSION

### A. The Legal Framework

To be eligible for disability benefits under the Act, the claimant must have a "medically determinable physical or mental impairment" of such severity that it renders him unable to perform his previous work or "engage in any other kind of substantial work which exists in the national economy." 42 U.S.C. §§ 423(d)(1)(A) & (2)(A) (1976). The claimant bears the initial burden of showing that he has a disability preventing him from returning to his previous type of employment. 42 U.S.C. § 423(d)(5) (1976); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982); *Dousewicz v. Harris*, 646 F.2d 771, 772 (2d Cir.1981). Thereafter, the burden shifts to the Secretary, "who must produce evidence to show the existence of alternative substantial gainful work which exists in the national economy and which the claimant could perform, considering not only his physical capability, but as well his age, his education, his experience and his training." *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.1980), *quoted in Dousewicz v. Harris*, 646 F.2d at 772.

The Secretary has established a five-step sequential evaluation for adjudication of disability claims, 20 C.F.R. § 416.920, which the Second Circuit has articulated as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant

---

1. In evaluating the severity of a mental impairment, a Psychiatric Review Technique Form must be completed and appended to the ALJ's decision. 20 C.F.R. § 416.920a (1987).

has an impairment which is listed in appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

*Berry v. Schweiker*, 675 F.2d at 467.

A claimant may obtain review of the Secretary's final decision by a federal district court. However, the review employed by the district court is not *de novo*. The Secretary's findings must be upheld if they are supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3) (1976); *Dousewicz v. Harris*, 646 F.2d at 773; *Parker v. Harris*, 626 F.2d at 231. Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). "Where the reviewing court finds that the Secretary's decision is not supported by substantial evidence, § 405(g) authorizes the court to reverse the Secretary's decision 'with or without remanding the cause for a rehearing.'" *Dousewicz v. Harris*, 646 F.2d at 773 (citations omitted).

## B. The ALJ's Determination

Plaintiff claims that the ALJ's decision should be either remanded, or overturned and judgment awarded to him, on several grounds. First, plaintiff claims that he did not make a voluntary and intelligent waiver of counsel. Second, plaintiff contends that the ALJ erred by failing to advise him that he could call witnesses on his own behalf, and cross-examine the psychiatrist and vocational expert who testified at the hearing. Third, the plaintiff maintains that the ALJ failed to develop the record scrupulously and zealously by not pursuing answers which indicated that there was more evidence bearing on the case. Finally, plaintiff argues that the ALJ's determination was not supported by substantial evidence, because the testimony of the doctor at the hearing was undermined by inconsistencies, and the testimony of the vocational expert at the hearing was rendered useless by an unduly narrow hypothetical question posed by the ALJ.

■ A claimant appearing before an ALJ is entitled to be represented by counsel. *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir.1980). The Secretary is not obligated to furnish a claimant with an attorney, but the ALJ must ensure that the claimant is aware of his right to counsel. *Robinson v. Secretary of Health and Human Services*, 733 F.2d 255, 258 (2d Cir. 1984). It is clear from the record that Mr. Alvarez did not knowingly and voluntarily waive counsel. The record reflects that Mr. Alvarez unsuccessfully attempted to secure counsel from Legal Aid on the day of his hearing, and that when he arrived at the hearing absent counsel, the ALJ misinterpreted Mr. Alvarez's subsequent explanation to mean that he was willing to proceed without counsel. A more thorough inquiry by the ALJ could have revealed Mr. Alvarez's desire to proceed with counsel, and allowed the ALJ to inform Mr. Alvarez of the possibility of adjourning the hearing until he obtained counsel.

■ Although the ALJ did not make a sufficient effort to ensure that Mr. Alvarez understood his rights, lack of counsel in an administrative proceeding is not, in and of itself, grounds for remand or reversal of an ALJ's decision. *Vidal v. Harris*, 637 F.2d 710, 713 (9th Cir.1981). Lack of counsel "would not affect the validity of the hear-

ing unless the claimant demonstrates prejudice or unfairness in the proceeding." *Heisner v. Secretary of Health, Education and Welfare,* 538 F.2d 1329, 1331 (8th Cir. 1976). Thus, this Court must determine whether Mr. Alvarez was prejudiced by his lack of counsel. It is apparent from the record that Mr. Alvarez was.

When a claimant appears pro se, the ALJ has a heightened responsibility "to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts ...," *Robinson v. Secretary of Health and Human Services,* 733 F.2d at 258, *quoting Gold v. Secretary of HEW,* 463 F.2d 38, 43 (2d Cir.1972), and "the reviewing court must make a 'searching investigation' of the record to ensure that the claimant's rights were protected." *Id.* Determining whether Mr. Alvarez was prejudiced by his lack of counsel, therefore, is bound up in the inquiry of whether the ALJ properly conducted the hearing and adequately developed the record.

█ The ALJ did not meet his duty to develop the record vigorously in this case.[2] The ALJ's failure to inform Mr. Alvarez that he had a right to cross-examine adverse witnesses was compounded by the ALJ's inadequate questioning of Dr. Barash, a board-certified psychiatrist, and Ms. Nivens, a vocational expert.

The ALJ based his decision predominantly on the testimony of Dr. Barash and Ms. Nivens. Dr. Barash interpreted the written reports of various doctors who treated and examined Mr. Alvarez, including psychiatrists who had examined Mr. Alvarez at government expense. None of those individuals testified at the hearing. Their reports simply provided the basis for Dr. Barash's testimony at the hearing that Mr. Alvarez was not disabled. Ms. Nivens based her testimony entirely upon a hypothetical question posed by the ALJ.

The record demonstrates that the ALJ introduced Dr. Barash and Ms. Nivens in a manner which misleadingly implied that they were not adverse witnesses, when in fact the testimony of both witnesses led the ALJ to deny Mr. Alvarez's claim for benefits:

> [L]et me explain to you who the other people here are. Sitting to your far left is a medical doctor, Dr. Barash. Dr. Barash is a psychiatrist and is here to help me understand what the medical record shows in this case. I want you to understand he's not a witness for Social Security, he's not your witness. He's not here to evaluate you individually or treat you in any way. Sitting around to your near left is a vocational expert. She is here also as an independent witness to assist me in understanding what the record establishes as far as your job opportunities.

Tr. at 38. By introducing the witnesses this way, the ALJ masked the fact that their testimony could be extremely damaging to Mr. Alvarez's claim, and gave no indication that their testimony could be challenged by anyone.

This Circuit has previously recognized the importance of providing a claimant the opportunity to subpoena and cross-examine experts submitting reports adverse to his claim. *Fernandez v. Schweiker,* 650 F.2d 5, 8–9 (2d Cir.1981); *Gullo v. Califano,* 609 F.2d 649, 650 (2d Cir.1979). Similarly, a claimant should be able to cross-examine witnesses appearing at the hearing whose testimony undercuts his claim. Mr. Alvarez, a *pro se* claimant with little education and a limited knowledge of English, having been diagnosed as having "borderline" intelligence, may not have been capable of taking advantage of the opportunity to call witnesses on his own behalf, subpoena and cross-examine any of the non-testifying doctors, or cross-examine Dr. Barash and Ms. Nivens. However, if the ALJ had ful-

---

**2.** The Court does not find fault with the ALJ's compilation of medical records from Mr. Alvarez's treating physicians and examining psychiatrists. Mr. Alvarez protests that the ALJ did not acquire the surgical records of his hernia operations, but the ALJ did acquire the records of the physicians who treated Mr. Alvarez in the years following the operations. This is sufficient, especially because the ailments Mr. Alvarez claims render him disabled do not relate to his hernias.

The Court also finds the ALJ's questioning of Mr. Alvarez at the hearing to be adequate.

filled his obligation of vigorously exploring for all the relevant facts, including properly questioning witnesses upon whose testimony he relied, Mr. Alvarez would not have been prejudiced by his lack of counsel and his ignorance of his right to call and cross-examine witnesses. The transcript of the hearing reveals that neither Dr. Barash nor Ms. Nivens was questioned in a manner consistent with the ALJ's duty to develop the record scrupulously and diligently in a case with an unrepresented claimant. Consequently, Mr. Alvarez did not receive a full and fair hearing.

At the hearing, the ALJ emphasized that Dr. Barash's function was "to help me understand what the medical record shows in this case." Tr. at 38. Dr. Barash's primary responsibility was to help the ALJ in the second and third steps in the five part analysis required by the Secretary; that is, to determine whether Mr. Alvarez was severely impaired, and whether he had a "listed" impairment. The medical records contained information both supporting and damaging Mr. Alvarez's claim. In any event, it is clear that Mr. Alvarez had a number of mental and physical problems, including a personality disorder, back pain, headaches, hearing loss, and hernias. Yet despite the fact that Dr. Barash drew a number of conclusions which, at the very least, were expressions of opinion amounting to more than merely "helping the ALJ to understand what the medical record shows in this case," the ALJ "rubber-stamped" Dr. Barash's conclusion that Mr. Alvarez did not have a "listed" impairment without the searching inquiry required under these circumstances, where the claimant was unrepresented and unaware that he could cross-examine or subpoena witnesses.

The manner in which the ALJ questioned Ms. Nivens was also unacceptable. Having determined, with the aid of Dr. Barash, that Mr. Alvarez did not suffer from a "listed" disability, and that he could not resume his previous employment, the Secretary's fifth requirement compelled the ALJ to determine whether Mr. Alvarez could be gainfully employed in another capacity. The Secretary bears the burden at the fifth stage of the five-step sequential evaluation process, and the ALJ opted in this instance to employ a vocational expert to help him make this determination.

As with Dr. Barash, the ALJ did not inform Mr. Alvarez that he could cross-examine Ms. Nivens. Moreover, the ALJ did not himself engage Ms. Nivens in a meaningful colloquy. Instead, the ALJ directed Ms. Nivens to answer his questions "in terms of the hypothetical only." Tr. at 57. A hypothetical question posed to a vocational expert "should precisely set out the claimant's particular physical and mental impairments." *Tennant v. Schweiker*, 682 F.2d 707, 711 (8th Cir.1982).

The defective hypothetical question posed by the ALJ at the hearing failed adequately to describe Mr. Alvarez's mental and physical ailments. For example, the ALJ asked Ms. Nivens to assume the existence of an individual whose "general physical reserve allows the performance of no more than the full range of light work efforts," Tr. at 57–58, when the ALJ himself found that Mr. Alvarez's "additional nonexertional limitations do *not* allow him to perform the full range of light work." Tr. at 13 (emphasis added). The testimony of a vocational expert who has never examined the claimant, in response to a single faulty hypothetical question posed by the ALJ, does not produce the necessary substantial evidence to deduce that the claimant is able to engage in gainful employment. *Cf. De Leon v. Secretary of Health and Human Services*, 734 F.2d 930, 934–35 (2d Cir.1984).

Mr. Alvarez was prejudiced at the hearing because the ALJ did not fulfill his special obligation to a pro se claimant to ensure that the record was fully developed, after failing adequately to inform the claimant of his right to an attorney and to subpoena and cross-examine witnesses.

## CONCLUSION

For the reasons set forth in the opinion above, the decision of the Secretary is reversed, and this case shall be remanded to

 

the Secretary for a new hearing to be conducted in accordance with this opinion.

SO ORDERED.