Cullinane v. SSA                    CV-02-213-JD  01/09/03

UNITED STATES DISTRICT COURT FOR THE
                          DISTRICT OF NEW HAMPSHIRE


Donna Cullinane

        v.                              Civil No. 02-213-JD
                                        Opinion No. 2003 DNH 003
Jo Anne B. Barnhart


                            O R D E R


     The plaintiff, Donna Cullinane, seeks judicial review,

pursuant to 28 U.S.C. § 405(g), of the decision of the

Commissioner of the Social Security Administration denying her

application for social security benefits.  Cullinane moves to

reverse the decision on the grounds that the Administrative Law

Judge ("ALJ") erred in finding that she did not have a severe

impairment, failed to properly develop the record, and failed to

properly advise her of her right to counsel.  The Commissioner

moves to affirm the decision.



                          Background

     Donna Cullinane applied for social security benefits in July

of 1998, alleging a disability beginning on June 15, 1995, caused

by a heart condition, supraventricular tachycardia ("SVT").  Her

insured status expired on December 31, 1997.

     Cullinane complained of heart palpitations in August of

1995.  Her doctor noted that she smoked a pack of cigarettes and

drank ten cups of coffee per day. She was referred to Dr. Joel Cutler for a cardiovascular evaluation. Although Dr. Cutler noted a diagnosis of paroxysmal SVT, subsequent testing did not produce any arrhythmia. Other testing produced normal results. By March of 1996, her medical records indicate that her tachycardia was fairly well controlled by medication.

Cullinane reported three episodes of tachycardia in one week at a medical appointment in February of 1997. The medical record indicates that Cullinane was under stress at that time, had recently changed from trade name to generic medication, and had missed several medication doses during the week when the episodes occurred. The nurse practitioner concluded that the episodes were secondary to stress, caffeine use, smoking, and non-compliance with her medication regime.

The next medical record is from an appointment in January of 1998 when Cullinane was examined by Dr. John Daley, after moving from Maine to New Hampshire. Dr. Daley noted that Cullinane presented vague symptoms of fatigue and shortness of breath which had increased around the time of her move, that she reported her tachycardia was controlled by medication, and that she was still smoking a pack a day and drinking coffee. Dr. Daley thought that stress could be causing Cullinane's symptoms.

On Dr. Daley's recommendation, Cullinane underwent a Bruce Protocol exercise tolerance test. Dr. Brian Shea interpreted the

2

results finding no ischemic EKG changes or arrhythmias but also finding that her chest tightness might suggest angina. A follow-up test in February was negative for ischemia but positive for angina. Cullinane also reported to Dr. Connor Haugh in February that she was experiencing monthly episodes of palpitations.

Due to Cullinane's continued complaints of fatigue, shortness of breath, and pain between the shoulder blades, Cullinane used a "long-term event monitor" in March of 1998 which showed symptomatic sinus tachycardia and SVT. In June of 1998, Dr. Daley reported that Cullinane continued to be bothered by tachycardia and that it caused her to be exhausted. In his opinion she was very disabled by tachycardia.

In September of 1998, Dr. Craig Campbell, a non-examining state agency physician, reviewed Cullinane's records from June of 1995 to December of 1997 and concluded that she had no functional limitations. Dr. Burton Nault, another non-examining state agency physician, reviewed her records for the same period and concluded that Cullinane was limited to work at the light exertional level.

A hearing before an ALJ was held on April 5, 1999. Cullinane appeared without counsel. The ALJ questioned her about her lack of representation and whether she understood that she could be represented at the hearing. Cullinane's mother, sister, and husband also testified at the hearing. Cullinane and her

3

family members testified about the effects of her illness on her activities. In his decision, the ALJ found that Cullinane had not shown that she had a medically severe impairment and concluded that she was not disabled at the second step of the disability analysis.

## Discussion

The court must uphold a final decision of the Commissioner denying benefits unless the decision is based on legal or factual error. Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (citing Sullivan v. Hudson, 490 U.S. 877, 885 (1989)). The Commissioner's factual findings are conclusive if based on substantial evidence in the record. See § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotation omitted). In making the disability determination, "[i]t is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

To be eligible for social security benefits, the claimant must show that she was disabled, meaning that she had a medically determinable physical impairment that lasted for at least twelve

months, beginning before the expiration of her insured status, and that the impairment made her unable to engage in any substantial gainful activity. 42 U.S.C. § 423(a)(1)(D); Henrie v. U.S. Dep't of Health & Human Servs., 13 F.3d 359, 360 (10th Cir. 1993). The Commissioner uses a five-step sequential analysis to determine disability under the Social Security Act. 20 C.F.R. § 404.1520. At the second step of the analysis, the claimant bears the burden of showing that she had a medically severe impairment. See 20 C.F.R. § 404.1520(c); Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

At step two, an impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 404.1420(c). The step two requirement is intended only to screen out meritless claims. See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1124 (1st Cir. 1986). Therefore, a claim may be denied at step two only if the medical evidence establishes nothing more than a slight abnormality that "would have no more than a minimal effect on an individual's ability to work." Barrientos v. Sec'y of Health & Human Servs., 820 F.2d 1, 2 (1st Cir. 1987) (internal quotation omitted).

The ALJ found that Cullinane had supraventricular and sinus tachycardia before her insured status expired. He considered the medical evidence both before and after her last insured date. He

5

concluded, however, that her impairment was not severe because her symptoms were generally controlled by medication and "the record simply does not support any long term disability or any underlying cardiac condition that would cause further complication." Decision at 4. He noted that her symptoms appeared to have been "at worst a nuisance." Id.

Cullinane's testimony at the hearing, and the testimony of her family members, support her complaints of a severe impairment due to fatigue. The medical evidence is not clear as to what symptoms or degree of impairment might reasonably be caused by SVT. Some of the medical evidence credits Cullinane's reports of fatigue resulting from SVT, while some suggests that her symptoms might have resulted from stress or other causes. Given Cullinane's pro se status at the hearing stage and the inconclusive record, it may have been error for the ALJ to conclude the analysis at the threshold level of the second step.

The record establishes, however, that a remand would be futile. See Ward v. Comm'r of Soc. Security, 211 F.3d 652, 656 (1st Cir. 2000). Even if Cullinane were deemed to have a severe impairment due to SVT at step two, all of the residual functional capacity assessments in the record found her to be capable of work.

The most restrictive assessment, completed by Dr. Haugh in July of 1999, credited her subjective complaints of fatigue but

6

nevertheless found her to be capable of activities at the sedentary exertional level. She does not claim any other exertional limitations. Cullinane was forty-one years old on her last insured date and forty-three years old when the ALJ issued his decision. Based on the Medical-Vocational Guidelines applicable to a younger individual age 18-44, limited to sedentary work, she was not disabled. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.23, et seq. Therefore, the Commissioner's decision denying Cullinane's application for benefits is affirmed on other grounds.

## Conclusion

For the foregoing reasons, the claimant's motion to reverse the decision of the Commissioner (document no. 9) is denied, and the Commissioner's motion to affirm (document no. 11) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

January 9, 2003

cc:   Raymond J. Kelly, Esquire
      David L. Broderick, Esquire

7